1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  RAYVONE ROBINSON,<br>CDCR #G33029, | Case No.:  3:22-cv-01401-GPC-DEB |

RAYVONE ROBINSON,
CDCR #G33029,

               Plaintiff,

vs.

RAYMOND MADDEN, Warden; J.
GALLEGOS; Correctional Counselor I;
FRANK SHARPE, Classification and
Parole Representative; KATHLEEN
ALLISON, Secretary of CDCR,

               Defendants.

Case No.:  3:22-cv-01401-GPC-DEB

**ORDER:**

**1)  GRANTING MOTION TO
PROCEED IN FORMA PAUPERIS
[ECF No. 2]**

**2)  DENYING MOTION FOR
TEMPORARY RESTRAINING
ORDER [ECF No. 3]**

**3) DISMISSING CLAIMS AND
DEFENDANTS**

**AND**

**4)  DIRECTING U.S. MARSHAL
TO EFFECT SERVICE OF
COMPLAINT UPON REMAINING
DEFENDANTS PURSUANT TO 28
U.S.C. § 1915(d) AND Fed. R. Civ. P.
4(c)(3)**

Rayvone Robinson ("Plaintiff" or "Robinson"), currently incarcerated at R.J. Donovan Correctional Facility ("RJD") and proceeding pro se, has filed a civil rights action

pursuant to 42 U.S.C. § 1983 together with a Motion to Proceed in Forma Pauperis ("IFP"). *See* Compl., ECF No. 1; ECF No. 2, 4. He has also filed a Motion for a Temporary Restraining Order ("TRO"). ECF No. 3.

## I.    Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84  (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec., 2020). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of his IFP Motion, Plaintiff has submitted a certified copy of his inmate trust account statement and a Prison Certificate. *See* ECF No. 4; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff carried an average monthly balance of $156.02, an average monthly deposit of $169.38 to his account over the 6-month period immediately preceding the filing of his Complaint, and a current balance of $35.11. *See* ECF No. 4 at 1.

Based on this accounting, the Court **GRANTS** Robinson's IFP Motion (ECF No. 4) and assesses an initial partial filing fee of $33.87 pursuant to 28 U.S.C. § 1915(b)(1). However, this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 577 U.S. at 86; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), or any subsequent agency having custody of Plaintiff, and forwarded to the Clerk of the Court pursuant to the installment payment provisions set out in 28 U.S.C. § 1915(b)(2).

## II.   Screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A

### A.   Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). The Court must review and *sua sponte* dismiss an IFP complaint, and any complaint filed by a prisoner seeking redress from a governmental entity, or officer or employee of a governmental

1  entity, which is frivolous, malicious, fails to state a claim, or seeks damages from

2  defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000)

3  (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004

4  (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to

5  ensure that the targets of frivolous or malicious suits need not bear the expense of

6  responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler*

7  *v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

8      "The standard for determining whether a plaintiff has failed to state a claim upon

9  which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

10  Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d

11  1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir.

12  2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard

13  applied in the context of failure to state a claim under Federal Rule of Civil Procedure

14  12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted

15  as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

16  662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

17      Detailed factual allegations are not required, but "[t]hreadbare recitals of the

18  elements of a cause of action, supported by mere conclusory statements, do not suffice."

19  *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief

20  [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

21  experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned,

22  the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility

23  standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

4

B.     Plaintiff's Allegations

According to Robinson, he is currently serving a prison sentence for the murder of a high level member of the Compton Crip gang. Compl., ECF No. 1 at 3–7.[2] He claims that prior to 2019, he was protected from violent attacks in prison by fellow members of the Blood gang with which he was associated. *Id.* In 2019, Robinson disassociated himself from the Bloods and was granted a Special Needs Yard ("SNY") classification. *Id.* at 3–7, 12. Robinson alleges that, contrary to California Department of Corrections and Rehabilitation ("CDCR") regulations, the SNYs at level IV institutions where he was previously housed were not free from Security Threat Group ("STG") activities and he was the victim of violent assaults while housed there after he refused to pay fellow inmates for protection. *Id.* He further claims that while he was in RJD's level IV SNY, he was subject to extortion and assaults, but did not report these incidents because he "would have face[d] possible death because 'snitching' is highly disfavored within the level IV prison population." *Id*. at 7.

In 2022, Robinson states he received a "behavior override placement." *Id.* at 4, 12. He is now housed at the level III SNY at RJD, which, according to Robinson, "does not have any STG gang members who were carrying out violent assaults or extortion such as [Robinson] was constantly subjected to in the level IV SNY facilities." *Id.* at 4–5. In August of 2022, Robinson claims defendant Gallegos told him he "[was] going to be taken to a classification committee for transfer back to a level IV SNY facility due to Plaintiff becoming involved in two incidents or altercations." *Id.* at 5. Robinson claims he has received information from another inmate that "if Plaintiff were to return [to a level IV SNY] . . . he would be immediately removed," which Robinson considers to be a threat of violent assault. *Id.*; ECF No. 3-2 at 4–5 Robinson further claims that when he told defendant Gallegos about his fears and threats to his safety, Gallegos "completely

---

[2] Robinson claims he was wrongfully convicted of the murder. Compl., ECF No. 1 at 3.

5

disregarded the risk to Plaintiff['s] safety" and told Robinson "he would still be taking Plaintiff to a classification committee for transfer to a level IV SNY facility." *Id.* at 7.

In support of his motion for TRO, he has submitted a declaration in which he alleges the Defendants "continue with their efforts to take this Plaintiff to classification committee the week of 9-13-22 for transfer to a level IV SNY facility where Plaintiff has known enemies he has identified to defendant J. Gallegos and this threat is being disregarded." ECF No. 3-2 at 2. Robinson states Defendants are seeking to transfer him to Mule Creek State Prison where he alleges two enemies, who he names, are currently incarcerated. *Id.* Robinson also alleges that Defendant Sharpe approved Gallegos's actions, despite the risk to his safety. *Id.*

Robinson filed an emergency grievance on August 27, 2022 explaining the reasons for his fears about being transferred to a level IV SNY facility. ECF No. 3-2 at 4–5. The CDCR replied to the grievance, saying review would be completed by October 29, 2022. *Id.* at 3.

C.   42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1138 (9th Cir. 2012).

D.   Discussion

"[P]rison officials have a duty [under the Eighth Amendment] . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citing *Farmer*, 511 U.S. at 833); *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) ("California's … prisoners may be murderers, rapists, drug dealers, and child molesters, but California is responsible for protecting even those sorts of people from murder by other prisoners."). In

order to state a plausible Eighth Amendment claim for relief, however, a Plaintiff must allege facts sufficient to show that Defendants acted with "deliberate indifference." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016); *Iqbal*, 556 U.S. at 678. "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)), *overruled on other grounds by Castro*, 833 F.3d at 1076. "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837) If a prisoner faces a substantial risk of serious harm, he need not wait until he actually suffers an attack before asserting a deliberate indifference or threat-to-safety claim. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition.").

### 1.   Defendants Gallegos and Sharpe

According to Robinson, he told Gallegos about his fears for his safety and the threats and physical violence he received as a target of STGs while in level IV SNY facilities but Gallegos continued to seek a level IV SNY classification for Robinson. Compl., ECF No. 1 at 5, 7. In addition, Robinson alleges defendants, including Gallegos, are continuing to seek classification for Robinson to a level IV SNY facility despite the fact that he has known and identified enemies at Mule Creek State Prison where he alleges defendants are seeking to transfer him. ECF No. 3-2 at 2.

Robinson's allegations are sufficient to survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The allegations plausibly allege an Eighth Amendment failure to protect claim because they show Gallegos was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed],'" and drew that inference. *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 837); *Iqbal*, 556 U.S. at 678. Robinson also alleges that Sharpe "approved

[Gallegos's efforts] to take [him] to the classification committee for transfer to a level IV SNY facility, disregarding the risk to Plaintiff's safety within those level IV SNY facilities." Compl., ECF No. 1 at 7. These allegations are also sufficient to plausibly allege an Eighth Amendment failure to protect claim against Sharpe at the screening stage. *Iqbal*, 556 U.S. at 678.

### 2.   Defendants Allison and Madden

As to defendants Allison and Madden, however, Robinson has failed to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Robinson claims Allison, the Secretary of the CDCR, and Madden, RJD Warden, violated his Eighth Amendment rights by failing to enforce regulations which keep STG inmates from engaging in violent and threatening activity in level IV SNY facilities. Compl., ECF No. 1 at 5–7.

There is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). Instead, "[t]he inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)).

In order state a plausible claim, Plaintiff must allege personal acts by each individual Defendant which have a direct causal connection to the constitutional violation at issue. *See Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). As supervisors, Allison and Madden may only be held liable for the allegedly unconstitutional violations of their subordinates if Robinson has alleged specific facts which show: (1) how or to what extent Allison and Madden personally participated in or directed the other Defendants' actions, and (2) in either acting or failing to act, Allison and Madden were an actual and proximate cause of the deprivation of his Eighth Amendment rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). As currently pleaded, however, Robinson's Complaint does not set forth facts which might be liberally construed to support an individualized constitutional claim against Defendants Allison and

Madden. Further, Robinson has not plausibly alleged Allison and Madden "kn[ew] of and disregard[ed] an excessive risk to [Robinson's] health and safety.'" *Toguchi*, 391 F.3d at 1057. Thus, the Eighth Amendment claims against Allison and Madden must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## III.    Motion for TRO and Preliminary Injunction

Plaintiff has also filed a Motion requesting a TRO and a hearing "preventing his placement in those level IV institutions that pose a threat to his safety." TRO, ECF No. 3, 3-2. In support of this motion, he has submitted a Declaration in which he alleges the Defendants "continue with their efforts to take this Plaintiff to classification committee the week of 9-13-22 for transfer to a level IV SNY facility where Plaintiff has known enemies he has identified to defendant J. Gallegos and this threat is being disregarded." ECF No. 3-2 at 2. Robinson alleges defendants are seeking to transfer him to Mule Creek State Prison where he alleges two named enemies are currently incarcerated. *Id.*

He has also submitted a declaration by fellow inmate Carl Ethridge, who states that in 2016, he overheard inmates discussing a threat to Robinson's life by a "well known Compton Crip" named "Grinch" while he was incarcerated at Salinas Valley State Prison. ECF No. 3 at 4. Specifically, Ethridge states the inmates said "Compton Crip SNY STGs had a 'green light'[3] on inmate Rayvone Robinson for being accused of the killing of a well-known Compton Crip," and that the inmates "made it clear that it was on sight with Rayvone Robinson in any level IV . . . ." ECF No. 3 at 4.

### A.    Standard of Review

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only

---

[3] According to Ethridge, "a green light is a[n] approval to assault someone on sight." ECF No. 3 at 4.

upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. *See, e.g., Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983); *Lathrop v. Unidentified, Wrecked & Abandoned Vessel*, 817 F. Supp. 953, 961 (M.D. Fl. 1993); *Kandlbinder v. Reagan*, 713 F. Supp. 337, 339 (W.D. Mo. 1989); *Suster v. Marshall*, 952 F. Supp. 693, 701 (N.D. Ohio 1996); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure 65(d)(2) an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." FED. R. CIV. P. 65(d)(2)(A)-(C).

Substantively, "[a] preliminary injunction is an extraordinary remedy never awarded as of right, and the grant of a preliminary injunction is a matter committed to the discretion of the trial judge[.]" *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1227 (9th Cir. 2017) (internal quotation marks and citations omitted). "'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S.863, 876 (2015) (*quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).

In addition, the Prison Litigation Reform Act ("PLRA") requires prisoners to satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any

adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

Section 3626(a)(2) places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators— no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000).

B.   Application to Plaintiff's Case

First, the Court notes Plaintiff's case is still in its preliminary screening stage, the United States Marshal has yet to effect service on his behalf, and Defendants have no actual notice. Therefore, the Court has no personal jurisdiction over any Defendant at this time. *See* Fed. R. Civ. P. 65(d)(2); *Murphy Bros., Inc.*, 526 U.S. at 350; *Zepeda*, 753 F.2d at 727-28.

Second, even if the Court had personal jurisdiction over defendants, Robinson has failed to establish the imminent irreparable harm required to support a preliminary injunction. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131. "The fact that plaintiff has met the pleading requirements allowing him to proceed with the complaint does not, *ipso facto*, entitle him to a preliminary injunction." *Claiborne v. Blauser*, No. CIV S-10-2427 LKK, 2011 WL 3875892, at *8 (E.D. Cal. Aug. 31, 2011), *report and recommendation adopted*, No. CIV S-10-2427 LKK, 2011 WL 4765000 (E.D. Cal. Sept. 29, 2011). Instead, to meet the "irreparable harm" requirement, Plaintiff must do more than plausibly *allege* imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to demonstrate by specific facts that there is a credible threat of immediate and irreparable

harm. Fed. R. Civ. P. 65(b). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.* at 674-75.

Here, Plaintiff claims he is "threatened with an imminent threat of irreparable harm of serious injury or death if he is transferred to a level IV [SNY facility]," and that "defendants are failing to protect him from a risk of assault or death by their efforts to transfer Plaintiff to a level IV institution . . . where the level IV . . . SNY security threat group gang members who wish to do Plaintiff serious harm are confined at." ECF No. 3 at 2. But Robinson admits he has not been reclassified at this time, nor has a transfer order been issued. *See* Compl., ECF No. 1 at 7; ECF 3-2 at 2. Thus, his allegations of potential harm and risk of injury are speculative, *see Caribbean Marine*, 844 F.2d at 674–75, and while Plaintiff may fear for his future safety as a result of a possible future transfer to a level IV SNY, he has failed to *establish* that he faces the immediate and credible threat of irreparable harm necessary to justify injunctive relief at this stage of the case. *Lyons*, 461 U.S. at 102; *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury."). *Rigsby v. State*, No. CV 11-1696-PHX-DGC, 2013 WL 1283778, at *5 (D. Ariz. Mar. 28, 2013) (denying prisoner's TRO based on fear of potential future injury based on past assaults); *Chappell v. Stankorb*, No. 1:11-CV-01425-LJO, 2012 WL 1413889, at *2 (E.D. Cal. Apr. 23, 2012) (denying injunctive relief where prisoner's claims of injury based on current or future housing decisions were nothing "more than speculative."), *report and recommendation adopted*, No. 1:11-CV-01425-LJO, 2012 WL 2839816 (E.D. Cal. July 9, 2012). A presently existing actual threat must be shown, even though injury need not be certain to occur. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279-80 (9th Cir. 1997); *Caribbean Marine*, 844 F.2d at 674.

Thus, for all these reasons, the Court denies Plaintiff's TRO motion (ECF No. 3) pursuant to Fed. R. Civ. P. 65 at this time.

/ / /

**IV.     Conclusion and Orders**

For all the reasons discussed, the Court hereby:

(1)     **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2);

(2)     **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the initial $33.87 partial filing fee assessed by this Order, if sufficient funds exist at the time this Order is executed, and to forward the remainder of the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

(3)     **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Alison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or by forwarding an electronic version to trusthelpdesk@cdcr.ca.gov;

(4)     **DISMISSES** Defendants Allison and Madden without prejudice based on Plaintiff's failure to state a claim against them pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b);

(5)     **DENIES** Plaintiff's Motion for TRO [ECF No. 3] pursuant to Fed. R. Civ. P. 65;

(6)     **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Defendants GALLEGOS and SHARPE and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each of these Defendants. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, his Complaint (ECF No. 1), and the summons so that he may serve them upon each of these Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, *include an address where Defendants Gallegos and Sharpe may be served*, *see*

S.D. Cal. CivLR 4.1.c, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

(7)   **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants Gallegos and Sharpe as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

(8)   **ORDERS** Defendants Gallegos and Sharpe, once served, to reply to Plaintiff's Complaint and any subsequent pleading Plaintiff files in the matter in which Gallegos and Sharpe are named as parties within the time provided by the applicable provisions of Federal Rules of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

(9)   **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants Gallegos and Sharpe, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document was served on these Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or

/ / /

/ / /

/ / /

/ / /

which fails to include a Certificate of Service upon Defendants Gallegos and Sharpe, may be disregarded.

**IT IS SO ORDERED**.

Dated:  September 19, 2022

Hon. Gonzalo P. Curiel
United States District Judge

3:22-cv-01401-GPC-DEB