UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYVONE ROBINSON,<br><br>                              Plaintiff,<br><br>v.<br><br>J. GALLEGOS, Correctional Counselor, FRANK SHARPE, Classification and Parole Representative,<br><br>                              Defendants. | Case No.:  22-cv-01401-GPC-DEB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**[Dkt. No. 13.]** |

Before the Court is Defendants J. Gallegos and Frank Sharpe's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 13.)  Plaintiff did not file an opposition.[1]  Based on the reasoning below, the Court GRANTS Defendants' motion to dismiss with leave to amend.

---

[1] Even though the opposition was due on January 13, 2023, (Dkt. No. 14), on January 26, 2023, because Court rescheduled the hearing date, it also granted Plaintiff leave to file an opposition by February 17, 2023.  (Dkt. No. 15.)  However, to date, no opposition has been filed.  Moreover, a failure to file an opposition "may constitute a consent to the granting of a motion . . . ."  S.D. Local Civ. R. 7.1(f)(3).  Despite this rule, the Court considers the merits of Defendants' motion.

**Procedural Background**

On September 13, 2022, Rayvone Robinson ("Plaintiff"), a state prisoner incarcerated at Richard J. Donovan Correctional Facility ("RJD"), filed a civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Raymond Madden ("Madden"), Warden; J. Gallegos ("Gallegos"), Correctional Counselor I; Frank Sharpe ("Sharpe"), Classification and Parole Representative; and Kathleen Allison ("Allison"), Secretary of the California Department of Corrections and Rehabilitation ("CDCR").  (Dkt. No. 1, Compl.)  He also filed a motion for leave to proceed in form pauperis ("IFP") and motion for temporary restraining order.  (Dkt. Nos. 2, 3.)  On September 20, 2022, the Court granted Plaintiff's motion to proceed IFP, denied the motion for temporary restraining order and dismissed Defendants Allison and Madden without prejudice for failing to state a claim pursuant to the Court's *sua sponte* review under 28 U.S.C. § 1915(e)(2) and § 1915A(b).  (Dkt. No. 6.)  Defendants Gallegos and Sharpe move to dismiss the claims against them.  (Dkt. No. 13.)

**Factual Background**

According to the complaint, Plaintiff is currently serving a prison sentence for the murder of a high-level member of the Compton Crip gang.  (Dkt. No. 1, Compl. at 3.[2])  He claims that prior to 2019, he was protected from violent attacks in prison by fellow members of the Blood gang with which he was associated.  (*Id.*)  On April 24, 2019, Plaintiff signed CDCR 128-86, Renunciation of STG[3] Affiliation, Association and Illicit Behavior, requesting protective placement on a Sensitive Needs Yard ("SNY").  (*Id.* at 3, 12.)  Through his renunciation of STG affiliation, Plaintiff disassociated himself from the Blood gang and was granted a Level IV SNY classification.  (*Id.* at 3-4, 12.)  However,

---

[2] Page numbers are based on the CM/ECF pagination.

[3] Security Threat Group

while at Level IV SNY, contrary to CDCR regulations, he discovered Security Threat Group ("STG") activities and he was the victim of violent assaults while housed there after he refused to pay fellow inmates for protection. (*Id.* at 4.) After being subject to a couple of violent assaults, Plaintiff complied and paid the "rent" for protection while he was at Level IV SNY. (*Id.*) The STG gang members at Level IV SNY operated without any restraint or consequences. (*Id.*) Plaintiff further claims that even though he was subject to extortion and assaults, he did not report these incidents because he "would have face[d] possible death because 'snitching' is highly disfavored within the level IV prison population." (*Id.* at 7.)

Plaintiff states that in 2022 he received a "behavior override placement" and was moved to Level III SNY at RJD, which did not have any "STG gang members who were carrying out violent assaults or extortion such as [Plaintiff] was constantly subjected to in the level IV SNY facilities." (*Id.* at 4-5.) In August 2022, Plaintiff claims Defendant Gallegos told him he "[was] going to be taken to a classification committee for transfer back to a level IV SNY facility due to Plaintiff becoming involed (*sic*) in two incidents or altercations." (*Id.* at 5.) He further asserts he received information from another inmate that if Plaintiff returned to Level IV SNY without paying the extortion fee, he would be immediately removed, meaning he would be "violently" removed. (*Id.*) Plaintiff further claims that when he told Defendant Gallegos about his fears and threats to his safety, Gallegos "completely disregarded the risk to Plaintiff['s] safety" and told Plaintiff "he would still be taking Plaintiff to a classification committee for transfer to a level IV SNY facility." (*Id.* at 7.) Plaintiff additionally alleges that Defendant Sharpe, as Gallegos' supervisor, approved taking "Plaintiff to the classification committee for transfer . . . disregarding the risk to Plaintiff's safety." (*Id.*)

The complaint alleges Defendants Gallegos and Sharpe violated his Eighth Amendment right for failing to protect Plaintiff by facilitating consideration of his transfer

from a Level III to a Level IV correctional facility.  (Dkt. No. 1, Compl. at 7.)  He also seeks an injunction barring Defendants from "transferring or placing [Plaintiff] in any level IV facility . . . where . . . gang members exist, without written notice to the court and good cause shown," $300,000 in compensatory relief, and $25,000 in punitive damages from each defendant.  (*Id.* at 11.)

## Discussion

### A    Legal Standard on Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that any "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when there exists sufficient factual content such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555 (noting that on a motion to dismiss the court is "not bound to accept as true a legal conclusion couched as a factual allegation"); *see Turner v. City & Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.") (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)).  And though "[t]he plausibility standard is not akin to a 'probability

4

requirement,'" it does "ask[] for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." *Id.* at 679.

Claims asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, courts "continue to construe pro se filings liberally when evaluating them under *Iqbal*" and "afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).

**B.     42 U.S.C. § 1983 – Failure to Protect Under the Eighth Amendment**

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (quoting *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011)).

The Eighth Amendment requires prison officials to provide "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quoting *Hudson v Palmer*, 468 U.S. 517, 526-27 (1984)). As such, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (omission in original) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)); *see Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (*same*); *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) ("California's . . . prisoners may be

murderers, rapists, drug dealers, and child molesters, but California is responsible for protecting even those sorts of people from murder by other prisoners.").

Prison officials violate the Eighth Amendment when two requirements are satisfied: 1) the deprivation alleged must be, objectively, "sufficiently serious", or "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm"; and 2) the prison official "must have a 'sufficiently culpable state of mind'" or "deliberate indifference' to inmate health or safety'". *Farmer*, 511 U.S. at 834 (citations omitted). "[A] prison official violates an inmate's Eighth Amendment right only if that official is "deliberately indifferent"—in other words, if the official is subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by failing to respond reasonably." *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020).  If a prisoner faces a substantial risk of serious harm, he need not wait until he suffers an attack before asserting a deliberate indifference or threat-to-safety claim. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition.").

### 1. Defendant Gallegos[4]

Defendants argue that Plaintiff failed to allege facts sufficient to support his claim for deliberate indifference arising from his proposed transfer to a Level IV SNY yard. (Dkt. No. 13 at 14-16.)  First, they first argue that speculative and general threats of violence from other inmates do not support a claim for deliberate indifference and Plaintiff failed to identify specific inmate enemies to Defendant Gallegos. (*Id.* at 14.)  Second, they maintain

---

[4] Defendants also challenge the sufficiency of the complaint's allegations that "Defendants were deliberately indifferent to [Plaintiff]'s safety by subjecting [Plaintiff] to physical assaults and extortions while on the Level IV yard." (Dkt. No. 13 at 12.)  However, Plaintiff raised these allegations against the dismissed defendants, not Defendants Gallegos and Sharpe, (Dkt No. 1 at 2, 6-7), and so the Court does not need to address the issue.

that the allegation that he was told by Gallegos that he would be taken to a classification committee to be considered for transfer to a Level IV SNY facility does not rise to a claim of deliberate indifference. (*Id.* at 15.) In fact, Plaintiff admits that he was involved in altercations that could subject an inmate to reclassification. (*Id.* at 15-16.)

Even though prison officials have an obligation to protect inmates from attack by other inmates, a plaintiff must allege that the defendant knew of and disregarded threats by other inmates when making future housing decisions and that such threats are more than speculative. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) ("The deliberate indifference standard 'does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur.'"). In *Berg*, the plaintiff alleged that he had been placed in the protective custody unit because his "life was in danger." *Id.* at 460. He further claimed that he told the defendant prison official that his life would be in danger if he reported to his tier porter job, but the defendant ignored his plea and ordered him to report to that job anyway, and he was subsequently beaten and raped. *Id.* at 460-61. Because the defendant did not present any supporting affidavit to challenge the plaintiff's allegations, the Ninth Circuit held that his pro se complaint, read liberally, stated a prima facie cause of action under the Eighth and Fourteenth amendments. *Id.* at 461.

Moreover, in *Hearns v. Terhune*, 413 F.3d 1036, 1041-42 (9th Cir. 2005), the Ninth Circuit held that the pro se plaintiff's allegation that prison officials knew that Muslim inmates had previously attacked the plaintiff, but was left unsupervised with those inmates were sufficient to "raise an inference that the prison officials acted with deliberate indifference, or knew that he faced a substantial risk of serious harm and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" The Ninth Circuit noted the detailed allegations in the amended complaint detailing religiously motivated violence that

was known by the prison officials that, when accepted as true and construed in the light most favorable to the plaintiff, raise an inference that the prison officials created the risk and then facilitated the attacks. *Id.* at 1040-41.

In this case, Plaintiff has alleged facts that he was subject to threats and attacks while previously housed at Level IV SNY and that if he returned and did not pay the "rent" for protection, he would be "violently" removed. (Dkt. No. 1, Compl. at 3-5.) However, he summarily alleges that despite informing Defendant Gallegos about the threat to his safety while in Level IV SNY facility, Gallegos disregarded the risk and indicated he would still place Plaintiff before a classification committee for transfer to a Level IV SNY facility. (*Id.* at 7.) Plaintiff does not provide facts as to what he told Defendant Gallegos to demonstrate that Gallegos was aware of the "obvious, substantial risk" to Plaintiff's safety or aware of facts from which an inference can be drawn that a substantial risk of serious harm exists. Therefore, Plaintiff has failed to allege an Eighth Amendment failure to protect claim against Gallegos for facilitating consideration of his transfer to a Level IV SNY facility. Moreover, even though Plaintiff had not yet appeared before a classification committee when he filed his complaint, he has not filed an opposition to provide updates as to his housing status and whether he is still threatened with an imminent threat of irreparable harm of serious injury or death.

Defendants next argue that Gallegos' action deciding to place Plaintiff before the classification committee to be considered for a transfer to a Level IV facility, does not, on its own, constitute a violation of his Eighth Amendment rights. (Dkt. No. 13 at 15-16.) The Eighth Amendment does not endow prisoners with the right to be housed with a particular security classification. *Myron v. Landsberger*, 476 F.3d 716, 719 (9th Cir. 2007) ("mere act of classification 'does not amount to an infliction of pain,' it 'is not condemned by the Eighth Amendment.'"); *Abreu v. Jaime*, Case No.: 1:16–CV–00715–BAM (PC), 2017 WL 5900074, at *3 (Nov. 30, 2017) ("The Constitution does not require that plaintiff

be placed in 'protective custody,' only that the defendants take reasonably available measures to abate a substantial the risk of harm."); *see also Hall v. Tilton*, No. C 07–3233 RMW (PR), 2010 WL 2629914 at *4 (N.D. Cal. June 29, 2010) (rejecting a prisoner's claim that retaining him in a Level III facility when he was a Level II inmate violated his rights under the Eighth Amendment), *aff'd* 530 Fed. App'x 690 (9th Cir. 2013).

As such, Plaintiff's allegation that his Eighth Amendment right was violated when Gallegos decided to place Plaintiff before the classification committee to be considered for a transfer to a Level IV facility does not support a claim under the Eighth Amendment. Accordingly, in sum, the Court GRANTS Defendants' motion to dismiss the claims against Defendant Gallegos.

### 2. Defendant Sharpe

Defendants argue that Plaintiff has failed to adequately plead a theory of supervisor liability as to Defendant Sharpe. (Dkt. No. 13 at 16-18.)

The complaint summarily alleges that Defendant Sharpe is liable because he is Gallegos' supervisor, and therefore, approved Gallegos' conduct of taking Plaintiff to the classification committee for transfer to Level IV SNY facility and disregarded the risk to Plaintiff's safety. (Dkt. No. 1, Compl. at 7.)

There is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). Instead, "[t]he inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting

9

*Hansen v. Black,* 885 F.2d 642, 646 (9th Cir. 1989)). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (internal alteration and quotation marks omitted).

In this case, Plaintiff has failed to allege facts to support Sharpe's personal involvement in the alleged constitutional deprivation, his acquiescence in the constitutional deprivation, or any conduct that shows reckless indifference to the rights of others. Plaintiff merely alleges liability based on Sharpe's role as Gallegos' supervisor. Accordingly, the Court GRANTS Defendants' motion to dismiss as to Defendant Sharpe.

**C.    Eleventh Amendment Immunity**

Defendants move to dismiss the claims for money damages against Defendants in their official capacity as barred under the Eleventh Amendment. (Dkt. No. 13 at 18.)

The Eleventh Amendment to the United States Constitution bars federal courts from hearing suits brought by private citizens against state governments unless the State has waived its immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (*per curiam*) (suit against State and its Board of Corrections barred by Eleventh Amendment absent State's consent to suit). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity[.]" *Brown v. California Dep't of Corrections*, 554 F.3d 747, 752 (9th Cir. 2009) (quoting *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999)). Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . . As such, it is no different from a suit against the State itself." *Will,*

491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). However, the Eleventh Amendment does not bar a plaintiff from seeking prospective injunctive relief against the state official for a violation of federal law. *Id.* at 71 n. 10 ("[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) and citing *Ex Parte Young,* 209 U.S. 123, 159-60 (1908)).

Here, Plaintiff seeks monetary damages against Defendants in their official and personal capacities. (Dkt. No. 1, Compl. at 2.) To the extent Plaintiff seeks damages against Defendants in their official capacity, they are barred by the Eleventh Amendment. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claims for monetary damages against them in their official capacities.

**D.  Leave to Amend**

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401. Moreover, in the Ninth Circuit, "[p]ro se plaintiffs proceeding [in forma pauperis] must . . . be given an opportunity to amend their complaint [prior to dismissal] unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Franklin v. Murphy*, 745 F.2d 1221, 1228 n.9 (9th Cir. 1984) (citation and internal quotation marks omitted); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a pro se complaint without

leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (internal quotation marks and citation omitted)).

Here, because leave to amend would not be futile, the Court GRANTS Plaintiff leave to file an amended complaint.

## Conclusion

Based on the reasoning above, the Court GRANTS Defendants' unopposed motion to dismiss the complaint with leave to amend. Plaintiff shall file an amended complaint that cures all the deficiencies of pleading noted no later than **May 5, 2023**. Plaintiff's amended complaint must be complete by itself without reference to his previous pleadings. Defendants not named and any claim not re-alleged in his amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an amended complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted, and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

/ / /
/ / /
/ / /
/ / /

Finally, the Clerk of the Court is **DIRECTED** to provide Plaintiff with a blank court-approved form Amended Civil Rights Complaint pursuant to 42 U.S.C. § 1983 for his use and convenience.

The hearing set on March 10, 2023 shall be **vacated**.

IT IS SO ORDERED.

Dated:  March 7, 2023

Hon. Gonzalo P. Curiel
United States District Judge

13
22-cv-01401-GPC-DEB